IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIMBERLY T. STAHLMAN,<br>    Individually and as the Surviving<br>    Spouse of COLONEL MICHAEL<br>    R. STAHLMAN, USMC<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | * * * * * * * * * * * * | Civil No. MAB 8:13-00171 |

**MEMORANDUM OPINION**

Kimberly T. Stahlman[1] ("Plaintiff") brings this action individually and as the surviving spouse of United States Marine Colonel Michael L. Stahlman under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, against the United States and various agencies (collectively, "Defendants").[2] She alleges that Defendants failed to follow their regulations when investigating her husband's death. (Compl., ECF No. 1, ¶ 882.) Defendants move to dismiss her Complaint for lack of subject matter jurisdiction or, alternatively, failure to state a claim. (*See generally* Def.'s Mot. Dismiss, ECF No. 10.) The parties have fully briefed the motion to dismiss, and the Court held a motion hearing on December 19, 2013. (*See* Mot. Hr'g., ECF No. 20.) For the following reasons, Defendants' motion to dismiss is hereby **GRANTED**.

---

[1] The Complaint names "Kimberly T. Stahlman" as Plaintiff, but Plaintiff's Response Brief names "Kimberly P. Stahlman" as Plaintiff.

[2] Plaintiff names as Defendants the United States, the United States Department of Defense and Honorable Leon E. Panetta, Secretary (in his official capacity), the United States Department of the Navy and Honorable Ray Maybus, Secretary (in his official capacity), the Naval Criminal Investigative Service and Honorable Mark Clookie, Director (in his official capacity), the United States Marine Corps and Honorable General James F. Amos (in his official capacity), and the United States Armed Forces Medical Examiner and Honorable Craig Mallak, M.D., Chief (in his official capacity).

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Allegations

Plaintiff alleges that, in January 2008, Colonel Stahlman began a one-year deployment to Iraq, which would be his last before retiring from a career in the Marines. (*See* Compl. ¶¶ 15-16.) Plaintiff states that Colonel Stahlman was looking forward to retirement because he would be able to spend more time with his family and begin a post-retirement career teaching law. (Compl. ¶ 15.)

As of July 2008, the Marines had stationed Colonel Stahlman at Camp Ramadi, near Baghdad, where he assumed several criminal justice roles. (Compl. ¶ 17.) Among other things, Colonel Stahlman coordinated interactions among Iraqi police, judges, and prosecutors; maintained contacts with the Iraqi court system; interacted with long-term Iraqi incarceration facilities; and interacted with United States and Coalition Force detention facilities. (Compl. ¶ 17.) He also assisted with internal criminal investigations, including one into a reported fuel theft ring at Camp Ramadi. (Compl. ¶ 17.) In addition, he participated in the development of a jail for thousands of Iraqi terrorists, was involved in the negotiation of a land dispute with former Iraqi government officials and tribal leaders, and presided over a military trial of Marines accused of killing Iraqi civilians. (*See* Compl. ¶¶ 18-19, 22.) The Complaint further alleges that Colonel Stahlman had concerns regarding a decision to abandon a project, then 90 percent complete, to develop an internment facility that separated Sunni and Shiite prisoners. (*See* Compl. ¶¶ 20-21.)

During his deployment, Colonel Stahlman kept in regular contact with his wife, the Plaintiff, and their two daughters. He wrote to them about being excited for his fifteen-day leave

scheduled for early September 2008, his plans to vote by absentee ballot in the November 2008 elections, and how much he missed them. (Compl. ¶¶ 19, 23-25.)

On July 31, 2008, Colonel Stahlman did not appear for a scheduled convoy. (Compl. ¶¶ 27, 31.) A Sergeant sent to retrieve him found the door to Colonel Stahlman's barracks unlocked. (Compl. ¶¶ 31-32.) When the Sergeant entered, he found Colonel Stahlman lying in bed with a gunshot wound to his head. (Compl. ¶ 33.) Colonel Stahlman was transported to an army hospital in Iraq and later to the National Naval Medical Center in Bethesda, Maryland, where he died on October 5, 2008. (Compl. ¶ 33.)

Based on an autopsy and a Naval Criminal Investigation Service ("NCIS") investigation, the Armed Forces Medical Examiner concluded that Colonel Stahlman had committed suicide. (Compl. ¶¶ 53, 79.) The Maryland Department of Vital Records subsequently issued a death certificate consistent with this finding. (Compl. ¶ 79.) Plaintiff alleges, however, that the investigation was inadequate because investigators failed to follow Department of Defense, NCIS, and Judge Advocate General ("JAG")[3] regulations governing investigations into non-combat deaths other than from disease or natural causes.[4] (Compl. ¶¶ 54-78.) Plaintiff contends that these regulations, taken together, required NCIS to investigate and treat Colonel Stahlman's

---

[3] Although the Complaint alleges that Defendants failed to comply with JAG regulations, Plaintiff acknowledged at the December 19, 2013 motion hearing that the Complaint does not allege that an administrative investigation governed by these regulations occurred. (*See* Mot. Hr'g. Tr. 7-9, Dec. 19, 2013.) Therefore, Plaintiff has failed to allege any grounds for invoking these regulations.

[4] Department of Defense policy provides, "All noncombat deaths of members of the Armed Forces on active duty, not medically determined to be from natural causes, shall be investigated as potential homicides until evidence establishes otherwise." U.S. Department of Defense Instruction No. 5505.10 (Jan. 31, 1996). Similarly, Navy regulations state, "NCIS shall investigate the circumstances [of any non-combat death not attributable to disease or natural causes] until criminal causality can be reasonably excluded." U.S. Department of Navy Instruction 5430.107 § 7b(1)(a) (Dec. 28, 2005). The NCIS Investigations Manual likewise indicates, "In all instances of unattended death on a Navy or Marine Corps Installation or vessel the possibility of foul play always exists. Therefore, NCIS should conduct an investigation even in those instances where the death appears from the outset to have resulted from suicide." NCIS Investigations Manual.

death as a homicide unless, after consideration of all the facts, clear and convincing evidence indicated that his death was a suicide.[5] (Compl. ¶¶ 50-54.)

Plaintiff references numerous, specific investigative failures that allegedly deviate from this regulatory standard. She avers that Defendants conducted little or no investigation into forensic evidence at the scene that might have been inconsistent with a self-inflicted wound, (*see* Compl. ¶¶ 63, 66-71), or into security risks Colonel Stahlman faced in his high-profile roles, (Compl. ¶ 60). To the contrary, Plaintiff alleges that the Navy informed her the same day that her husband was shot that he had suffered a self-inflicted gunshot wound, (Compl. ¶ 55), and, almost immediately, opened an investigation into suspected "malingering," defined as intentionally inflicting self-injury to avoid work, duty, or service, (Compl. ¶ 56).

B.  **The Motion to Dismiss**

Plaintiff filed this action on January 16, 2013 under the APA, alleging that Defendants failed to follow their own regulations in their investigation of Colonel Stahlman's death. (Compl. ¶ 1.) Plaintiff asks the court to order Defendants to reopen the investigation and comply with applicable regulations in completing the investigation or, alternatively, to require Defendants to change the manner of death determination for Colonel Stahlman from "suicide" to "homicide." (*See generally* Compl.)

Defendants move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that (1) Plaintiff lacks standing because she has not alleged an injury in fact; (2) Defendants' actions do not constitute "final agency action" and therefore are not subject to review under the APA; (3) Defendants' actions are exempt from review under the APA because they are "committed to agency discretion"; (4)

---

[5] The parties indicated at the motion hearing that a final investigative report that could be evaluated against these guidelines. (Mot. Hr'g. Tr. 5, 24-25, 37.) However, neither party included this report in their pleadings.

Defendants' actions present a non-justiciable political question; and (5) the United States government has not waived sovereign immunity as to Plaintiff's claims under the APA because the Privacy Act, 5 U.S.C. § 552a, provides an adequate remedy to allow Plaintiff to seek amendment of the allegedly inaccurate records. (*See* Def.'s Mot. Dismiss 5-19.) Defendants also move to dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6), urging that Plaintiff fails to allege that Defendants acted contrary to any applicable constitutional provision, statute, or regulation. (*See* Def.'s Mot. Dismiss 19-24.)

Because the Court grants Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, it will not reach Defendants' 12(b)(6) motion to dismiss.

## II. STANDARD OF REVIEW

Motions to dismiss for lack of subject-matter jurisdiction challenge a court's authority to hear a matter. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A plaintiff has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citations omitted). If "a claim fails to allege facts upon which the court may base jurisdiction," the court will grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799 (citation omitted). Recent decisions of the Supreme Court make clear that Plaintiff must make a "showing" of her entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 n.3 (2007) (citation and quotation marks omitted). The showing must include at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When standing is challenged at the motion to dismiss stage, courts must presume that the factual allegations in the complaint are true and make reasonable inferences in the plaintiff's favor. *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988); *accord Senior Execs. Ass'n v. United*

5

*States*, No. 12-cv-2297, 2013 WL 1316333, at *13 (D. Md. Mar. 27, 2013); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003). Further, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (quotation marks omitted); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). However, "the burden of establishing standing 'lies squarely on the party claiming subject-matter jurisdiction.'" *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009) (quoting *Frank Krasner Enters. Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 234-35 (4th Cir. 2005)).

### III. DISCUSSION

#### A. Standing

Standing is a threshold jurisdictional question that ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). "The core goal of the standing inquiry is to ensure that a plaintiff bringing an action has enough of a stake in the case to litigate it properly." *Pye v. United States*, 269 F.3d 459, 466 (2001). For example, the standing doctrine precludes a litigant from raising another person's legal rights, bars courts from adjudicating general grievances that other branches may more appropriately address, and imposes the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citations omitted). Further, the doctrine requires that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id*. (citation omitted).

A standing inquiry includes both a constitutional analysis and a prudential inquiry. *See id.* at 750-51; *GBA Assoc. v. Gen. Servs. Admin.*, 32 F.3d 898, 900 (4th Cir. 1994) (quoting *Motor Coach Indus., Inc. v. Dole*, 725 F.2d 958, 963 (4th Cir. 1984)). To demonstrate standing in the APA context, a plaintiff must satisfy the United States Constitution's Article III standing requirements that she has suffered an injury in fact that is fairly traceable to the defendant's conduct and that a court can provide relief to redress the injury. *Allen*, 468 U.S. at 751; *Motor Coach Indus.*, 725 F.2d at 963 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976); *Assoc. of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150 (1970) (hereinafter "*Data Processing*")). Specifically, the court must assess whether the injury that plaintiff alleges is too abstract to be judicially cognizable, whether a causative link exists between the alleged illegal act and injury, and whether the prospect of obtaining relief from the injury through a favorable ruling is too speculative. *Allen*, 468 U.S. at 752. The court should consider these issues "by reference to the Art[icle] III notion that federal courts may exercise power only in the last resort, and as a necessity, and only when adjudication is consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process." *Id.* (second brackets in original) (citations quotation marks omitted).

Courts have interpreted the APA as requiring a prudential inquiry into whether the plaintiff has alleged an injury within the zone of interests protected by a statutory or constitutional provision. *See, e.g.*, *Data Processing*, 397 U.S. at 152; *see also* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). The zone of interests test requires a court to determine which interests the statute or constitutional provision at issue arguably protects and whether the agency action affects those

interests. *Data Processing*, 397 U.S. at 153; *accord Pye*, 269 F.3d at 470 (citations omitted); *TAP Pharm. v. U.S. Dep't of Health & Human Servs.*, 163 F.3d 199, 203 (4th Cir. 1998). The court should look to the substantive provisions of the statute or constitutional guarantee that serve as the gravamen of the complaint and consider whether plaintiff's interest falls within its zone of interest "by reference to the particular provision of law upon which plaintiff relies" rather than "by reference to the overall purpose of the act in question." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997).

Defendants argue that Plaintiff failed to allege that she suffered an injury-in-fact that satisfies either the constitutional or prudential requirements of the standing doctrine. (Def.'s Mot. Dismiss 11-14.) In her Opposition to the Motion to Dismiss, Plaintiff responds that she suffered an injury in fact because she should have received Colonel Stahlman's Purple Heart as successor to his property interests. (Pl.'s Resp., ECF No. 13, at 11-13.) Plaintiff asserts that Defendants deprived her of this property by making a "suicide" manner-of-death determination, which harmed her interest in her husband's Purple Heart.[6] (Pl.'s Resp. 11-13; Def.'s Mot. Dismiss Ex. 2.) Plaintiff further contends that she suffered an injury in fact because the "suicide" manner-of-death determination prevents her from enjoying a life free of stigma. (Pl.'s Resp. 11-13.) Likewise, she argues that the manner-of-death determination and Defendants' failure to adequately investigate her husband's death caused her emotional harm. (Pl.'s Resp. 11-13.) Finally, Plaintiff urges that she has third-party standing because her husband is unable to protect his own interests. (Pl.'s Resp. 11-13.)

---

[6] According to the Executive Order governing issuance of Purple Hearts, an officer is entitled to receive a Purple Heart posthumously when his death was the "result of an act of [an] enemy." (Def.'s Mot Ex. 2.) In such cases, "[t]he Purple Heart will be forwarded to the nearest of kin of any person entitled to the posthumous award regardless of whether a previous award has been made to such person." (Def.'s Mot. Ex. 2.)

While there is no question that Plaintiff has suffered as a result of the loss of her husband, a man who served an extended career in our nation's military, Plaintiff's Complaint fails to meet the threshold required to invoke the Court's jurisdiction. To demonstrate legal standing, Plaintiff must have alleged an injury that could be traced to the Defendant's conduct. However, the Complaint does not allege that Defendant's conduct deprived her of the right to receive her husband's Purple Heart, nor that she suffered any other harm to a financial or property interest. (*See generally* Compl.) The Complaint's reference to a Purple Heart is limited to a statement that the designation of "Purple Heart" was removed from her husband's tombstone. (Compl. ¶ 80.) The Complaint does not allege that Colonel Stahlman's death was the result of the act of an enemy, that Colonel Stahlman or Plaintiff was entitled to receive a Purple Heart, or that Plaintiff would have received the Purple Heart on Colonel Stahlman's behalf but for the manner-of-death determination. (*See generally* Compl.) The Complaint also does not include any of the allegations of social stigma or emotional harm that Plaintiff asserts in her Response. While Plaintiff raises these potential injuries in her Response, for the purposes of a motion to dismiss, Plaintiff is bound by her Complaint and cannot amend it through her briefs. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (citations omitted) (noting that a plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint"); *see also Hill v. Abercrombie & Fitch*, No. 11-00911, 2011 WL 4433573, at *4 n.5 (D. Md. Sept. 20, 2011) (same) (citations omitted). In any case, such allegations of emotional harm are insufficient to satisfy the injury-in-fact requirement unless the alleged harm stems from the infringement of a "legally protected" interest, such as deprivation of a property right. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *accord Bennett*, 520 U.S. at 167. Plaintiff thus lacks standing under Article III to bring this action

because she has not adequately alleged or demonstrated, by a preponderance of the evidence, that she has suffered an injury in fact. *Lovern*, 190 F.3d at 654.

Plaintiff also lacks third-party standing to bring this action. A party may assert third-party standing only if she has standing herself. *See Powers v. Ohio*, 499 U.S. 400, 410-411 (1991) ("[T]o bring actions on behalf of third parties . . . [t]he litigant must have suffered an injury in fact. . . .") (citation and quotation marks omitted); *accord Caplin & Drysdale Chartered v. United States*, 491 U.S. 617, 624 n.3 (U.S. 1989). For the reasons discussed above, Plaintiff has failed to allege adequately or demonstrate as necessary, her standing to bring this action, and thus also lacks third-party standing.

### B. Final Agency Action

Plaintiff has failed to allege a "final" agency action subject to judicial review under the APA. *See* 5 U.S.C. § 704; *Chaney*, 470 U.S. at 828. An agency action is final when it (i) constitutes the consummation of the agency's decision-making process and (ii) is an action by which "rights or obligations have been determined" or from which "legal consequences will flow." *Bennett*, 520 U.S. at 177-78 (citation and quotation marks omitted). Defendants argue, and the Court agrees, that Plaintiff's Complaint fails to allege facts that show Defendants' actions to be those which determine "rights or obligations" or from which "legal consequences will flow." (Def.'s Mot. Dismiss 6-7.)

Plaintiff responds that she has a "right" to the death certificate, which is a legal document, and that legal consequences flow from the "suicide" manner of death determination recorded on that death certificate because her husband was denied a Purple Heart on that basis. (Pl.'s Resp. 6-7.) The Court disagrees. First, Plaintiff has not alleged in her Complaint that Defendants' actions affected any of her rights or imposed any legal consequences on her.

Plaintiff did not plead in her Complaint that she had a "right" to Colonel Stahlman's death certificate or to any other agency action. (*See generally* Compl.) As discussed above, her Complaint also does not allege that Defendants denied a Purple Heart to Colonel Stahlman on the basis of the suicide determination reflected on his death certificate, nor that he would have been entitled to a Purple Heart if the manner-of-death determination had been different. (*See generally* Compl.) Second, to the extent that Plaintiff's argument of a final agency action relies on any right to the death certificate or alleged consequences flowing from the manner of death determination contained in the death certificate itself, the death certificate was issued by the Maryland Department of Vital Records, not any of the Defendants. (*See* Def.'s Reply, ECF No. 16, at 6.) The Maryland Department of Vital Records is not a defendant in this action and, at a minimum, would have to be joined to change Colonel Stahlman's death certificate.

### C. Remaining Grounds for Dismissal

Because the Court dismisses this action for the aforementioned reasons, it does not reach Defendants' remaining arguments for dismissal for lack of subject matter jurisdiction and failure to state a claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion and **DISMISSES** the Complaint without prejudice. A separate Order will **ISSUE**.

                                                    __s/ Mark A. Barnett_____
                                                                 Judge

Dated: January 22, 2014
New York, New York